IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAUL H. ANDERSON, etc.,

                                 Plaintiff,               Case No. 3:07 CV 576

      -vs-

                                           <u>MEMORANDUM   OPINION</u>

BOARD OF TRUSTEES OF THE
NORTHWEST OHIO UNITED FOOD AND
COMMERCIAL WORKERS UNION AND
EMPLOYERS' JOINT PENSION FUND,

                                 Defendant.

KATZ, J.

This matter is before the Court on cross-motions for summary judgment (Doc. 38, 41).

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. Background**

Defendant Board of Trustees of the Northwest Ohio United Food and Commercial

Workers Union and Employers' Joint Pension Fund ("the Fund" or "the Plan") is a multiemployer

pension plan, as defined by the Employee Retirement Income Security Act ("ERISA"). The Plan

administrator was National Employee Benefit Administrators ("NEBA"). The Fund covers

current and retired union employees who work or worked for Kroger grocery stores in Northwest

Ohio, and it provides pension benefits to retirees per the terms of its plan. Its sister fund is an

ERISA Health and Welfare ("H&W") Plan. The H&W Fund provides health insurance and

disability insurance to current employees at Northwest Ohio grocery stores. The H&W Fund is

not a party to the present case; the Pension Fund is the sole defendant.

Plaintiff Paul Anderson is the brother and executor of the estate of Allen Anderson ("Allen"), who was a participant in both funds and an employee of The Kroger Company ("Kroger") until his death.  As a career employee of Kroger, Allen was a member of the United Food and Commercial Workers Union ("UFCW") and as such was a participant in the Plan.

After more than thirty years as a stockperson at Kroger, Allen was diagnosed with lung and brain cancer in July 2005, and soon after learned from his oncologist that his cancer was inoperable and terminal.  Thereafter, Allen, unmarried and with no children, updated his last will and testament to leave everything that he could to his heirs, which included Plaintiff Paul.

Allen took a medical leave of absence from Kroger on July 27, 2005 and in doing so was entitled to six months of disability pay and three months of free health insurance.  As medical bills began to mount and the need to conserve income to pay for future cancer treatments became clearer, Allen successfully appealed to the H&W Fund to repay his necessary bills associated with prescriptions not available or covered at the Kroger pharmacy.

Allen contacted his union agent, Karen McHugh, who along with the Fund's NEBA liaison, Jan Palmison, informed Allen that he had three options: (1) Return to active status with Kroger for two weeks.  After two weeks on active status, Anderson could take another leave of absence—with six more months of disability pay ($225 per week) and restart the clock for three additional months of free health insurance; (2) Retire and receive retiree health insurance. However, the coverage provided was not an attractive option to someone faced with expensive medical treatments on the horizon; or (3) Retire and continue his current health insurance for eighteen months by paying for it through COBRA, at a cost of $755 per month.

Palmison did not inform Allen about another pension option, the Ten-Year Certain Option, beyond listing its name among other retirement options. Allen told Palmison that he had no intention of retiring, and that he wanted to win his battle with cancer and return to his job at Kroger. Palmison took this to mean Allen was focused on learning more about insurance options and not about retirement options, although Palmison did recognize that one of Allen's concerns was not leaving his parents with the burden of paying his medical bills. Palmison Depo. at 31-2, 36-8, 50-2, 64-7, 145, 164, 173, 237-8, 242-4, 310, 324, 339; McHugh Depo. 23-5, 34-5, 40, 43, 45, 50, 84. Finally, in October 2005, Allen wrote that he needed to return to work so that he could extend his health insurance another ninety days, given the high cost of COBRA. Anderson Depo., Ex. O at 2.

At an October 14, 2005 meeting arranged by McHugh, Allen and McHugh discussed retirement, and McHugh provided Allen a blank pension application form from the Pension Fund, in the event that he changed his mind and decided to retire. McHugh Depo. at 27, 29, 24-40, 42, 47, 50; Palmison Depo. at 25-26. McHugh explained to Allen that he could complete the pension application and instruct the Pension Fund to hold his application, rather than acting on it, which could expedite the process if Allen changed his mind about retirement. McHugh Depo. at 34-36, 42, 47. Allen agreed, as he worried about his deteriorating penmanship, but reiterated that he did not want to retire. *Id.* at 35-36, 42. McHugh assured Allen that the Pension Fund would not process his retirement papers unless he called and authorized the Fund to do so. *Id.* at 35, 42, 47, 50-51. Allen thereby signed the pension application. *Id.* at 40.

To meet Allen's needs, his doctor and Kroger arranged for him to return to Kroger's active payroll from October 22 through November 1, during which time Allen received vacation pay

3

under the pretense that on November 2, he would commence another leave of absence.  Anderson

Depo. at 42-45, Exs. E-G; McHugh Depo. at 25-9, 31-2; Palmison Depo. at 38, 46-48, 65-68, 60,

69-73, 118-20, Exs. 9-10.  By returning to active status with Kroger, Allen was able to extend his

health insurance through February 2006 and his disability pay through May 8, 2006.  Palmison

Depo. at 37-38, 42, 57, 119-20, 123, 278, Ex. 10; McHugh Depo. at 25-6; Anderson Depo. at

16-17, 44-47, Exs. F-G.  Consequently, however, Defendant contends that Allen could not become

eligible for any retirement benefit under the Plan until December 1, 2005 or later.  *See* Pension

Plan/AR at 017-18, 024, 036-37 (eligibility begins on first day of month following retirement).

Tragically, Allen Anderson lost his battle with cancer and passed away on November 23,

2005.

On December 2, 2005, Palmison received an email in response to an inquiry she made with

a professional plan consulting firm.  Palmison Depo., Pl. Ex. 15.  It read that if an unmarried

"person elects to **retire before he dies**, he can choose the 10 year certain option as a retirement

payment form."  *Id*. (emphasis in original).  The Ten-Year Certain Option would have allowed

Plaintiff's heirs to collect benefits after his death in an amount significantly greater than other

options.

In late 2005 or early 2006, Plaintiff contacted Defendant to see what benefits were

available to Allen's survivors.  Because Allen was Kroger's employee at the time of his death, the

H&W Fund paid $15,000 plus interest, in January 2006.  *Id*. at 48-49, 51, Exs. H, K; H&W Plan at

026.  However, confusion apparently arose over what retirement benefits were available.  Doc. 39

at 5.  The Fund's administrators were unsure whether a Ten-Year Certain Option, the sole

provision for posthumous benefits for unmarried participants such as Allen, was available to

4

Allen's estate or heirs.  Palmison Depo. at 183-89, 194-98, 298-99, Ex. 17.  After consulting with the Fund's actuary/consultant and its attorney, the Fund decided that Allen's estate and heirs could not posthumously elect a Ten-Year Certain Option because it was only available if a participant retired and received his first month's pension check before dying.  Siepman Depo. at 5-8, 53-56; Pension Plan/AR at 017-18, 034, 036; Palmison Depo. at 183-89, 194-98, 202, 208-09, 298-99, Exs. 15, 17; AR at 139.

Plaintiff submitted a written claim for pension benefits on March 16, 2006.  Anderson Depo. at 63-64, Ex. L at 6-8, AR at 140-42.  Defendant maintains that because Allen was still an employee of Kroger when he died, and had not retired, his beneficiaries were not entitled to any retirement benefits.  As a result of these findings, the Board of Trustees denied Plaintiff's claim in writing on March 28, 2006, and in doing so, provided his attorney with its Summary Plan Description ("SPD").  Anderson Depo. at Ex. K; AR 143-44.  According to the SPD, any appeal had to be submitted within sixty days, or by May 27, 2005, which came and went without an appeal being filed.

On July 24, 2006, Plaintiff's attorney filed a new claim for retirement benefits, which Defendants maintain was a disguised untimely appeal.  Doc. 39 at 6 (citing Anderson Depo. at 68-72, Exs. M-N/AR 145-8).  Nevertheless, on July 27, 2006, the Board of Trustees denied Plaintiff's claim.  Palmison Depo. at 245-6, 336, Ex. 23/AR at 178, 179a.

On February 27, 2007, Plaintiff, individually and as the executor for Allen Anderson's estate, filed suit against Defendant.  Plaintiff and Defendant both filed motions for summary judgment on April 7, 2008.

**II. Standard of Review**

5

Although this is a case ostensibly relating to a denial of a claim for benefits pursuant to an ERISA plan, Plaintiff does not herein bring a claim for wrongful denial of benefits pursuant to ERISA § 502(a)(1)(B). As such, and as the parties agree in such event, the standard of review applicable to the resolution of these motions is that of summary judgment.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).

6

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams     v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## III. Discussion

Plaintiff is not pursuing this claim as one for unpaid benefits under ERISA § 502(a)(1)(B). Rather, Plaintiff alleges breach of fiduciary duty and equitable estoppel under ERISA, and he seeks attorney's fees and declaratory judgment that administrative remedies were exhausted.  Doc. 50 at 6.

### A. Breach of fiduciary duty

7

A breach of fiduciary duty under ERISA § 502(a)(3) can be shown in a number of ways. The fiduciary duty standard under ERISA is a high one that encompasses three components. *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999).  First, pursuant to 29 U.S.C. § 1104(a)(1), a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries."  An ERISA plan administrator has a duty of loyalty that requires that "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.'" *Id*. (quoting *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1162 (6th Cir. 1988) and *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982)).  Second, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(i)-(ii).  Third, ERISA provides for a prudent person standard with regard to the execution of fiduciary duties by a plan's fiduciary.  The fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  *See Krohn*, 173 F.3d at 547.

### 1. Can Plaintiff pursue a 502(a)(3) claim?

Defendant argues that Plaintiff may not assert an ERISA § 502(a)(3) claim because Plaintiff has an underlying claim for wrongful denial of benefits under ERISA § 502(a)(1)(B), and Plaintiff is seeking monetary rather than equitable damages.[1]

---

[1] Defendant appears to make the additional argument that Plaintiff cannot sustain a claim for breach of fiduciary duty under § 502(a)(2) because it seeks individual relief, rather than relief for the

(continued...)

8

### a. Underlying 502(a)(1)(B) claim

Claims under ERISA § 502(a)(3) are barred where there is an underlying claim for wrongful denial of benefits under ERISA § 502(a)(1)(B).  *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444 (6th Cir. 2003); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).  "An ERISA plan participant can seek equitable relief against his plan administrator under § 502(a), 29 U.S.C. § 1132(a), if he has been harmed by the administrator's breach of a fiduciary duty."  *Marks*, 150 F.3d at 454 (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)).  "However, a participant cannot seek equitable relief for a breach of fiduciary duty under the catchall provision of § 502(a)(3) if the alleged violations are adequately remedied under other provisions of § 502."  *Marks*, 150 F.3d at 454.  In *Wilkins* and *Marks*, the courts disallowed the plaintiff from bringing claims under § 502(a)(3) where the plaintiffs both could and did bring denial of benefits claims.[2]  *Id.*; *Wilkins*, 150 F.3d at 615.

---

[1](...continued)
plan.  As noted above, however, Plaintiff's claim is pursuant to § 502(a)(3), and so Defendant's arguments are inapplicable, and indeed, Defendant appears to have dropped the argument.

[2]

Defendant takes this standard language from the circuit to mean that a fiduciary duty claim may not proceed where a denial of benefits claim could also exist as a remedy.  This Court notes some lack of clarity in this regard: it is unclear whether this standard, pieced together over several cases, requires a district court to undergo an analysis of a potential denial of benefits claim even where one has not been pursued by a plaintiff, or whether the standard only requires that the district court determine, based on the pleadings, whether the plaintiff is or is not seeking relief under a denial of benefits theory.  The Court finds it unlikely that the circuit's standard is intended to require a court to analyze and apply § 502(a)(1)(B) where the plaintiff is not pursuing, has not briefed, and (as in this case) explicitly disavows any claim pursuant to § 502(a)(1)(B).  First, that standard may put the court in the position of having to evaluate a hypothetical cause of action.  Second, such an approach puts the parties in an awkward position: for instance, here the defendant argues both that the plaintiff could not have pursued a claim under § 502(a)(1)(B) because he failed to file a timely appeal, and that the plaintiff could have pursued a claim under § 502(a)(1)(B) and therefore cannot under § 502(a)(3).  Finally, it takes something away from the legal adage that the plaintiff is the

(continued...)

9

Allen experienced a terrible iniquity. Having been diagnosed with cancer, he met with the plan administrator to learn about his options, and she knew he had cancer. The administrator did not inform him about the Ten-Year Certain Option, which, as it turns out, would have allowed him to retire and his heirs to collect benefits. Defendant attributes this lack of explanation to the fact that Allen expressed a desire to beat cancer and return to work (absurd as that may sound under the circumstances). Instead, choosing among the options that the administrator did discuss in detail, his ERISA plan compelled him to return to work while suffering from terminal cancer in the lung and brain in order to secure three months' worth of health insurance. He died a few days before the administrator now says he would have had to retire before collecting benefits.

Plaintiff is not claiming to be entitled to unpaid or denied benefits.[3] This is not a case

---

[2](...continued)
master of his complaint. Following the line that Defendant urges the Court to adopt, a plaintiff may choose to totally exclude a § 502(a)(1)(B) claim from his complaint and pursue only a § 502(a)(3) claim, but the defendant may seek dismissal of the latter because of the existence of the (unplead) former. A plaintiff would be required to *disprove* a denial of benefits claim in his own favor before pursuing a breach of fiduciary duty claim. The arguments in such a brief, because the two areas could encompass overlapping facts or arguments, could be internally contradictory.

The Court understands Defendant's argument that the point of the standard at issue is that, even in the event of a non-meritorious claim for wrongful denial of benefits, the plaintiff may not pursue a fiduciary duty claim. *See Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1089 (11th Cir. 1997) (availability of a remedy under § 502(a)(1)(B) does not mean a favorable adjudication, but still excludes a § 502(a)(3) claim). But that argument seems to go further than it needs to go as applied to this case. It would follow, again, that a plaintiff could not allege breach of fiduciary duty where he *could have claimed* a wrongful denial of benefits, which again puts the Court in the position of evaluating hypothetical § 502(a)(1)(B) claims. It appears to make more sense that § 502(a)(3) cannot be used as an *alternate* argument in a denial of benefits case, but rather only as a primary cause of action. Even that approach is questionable, however, as the two claims may co-exist in circumstances where the denial of benefits claim does not completely remedy the alleged injury. *See Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710 (6th Cir. 2005).

[3]
Plaintiff did allude to a possible denial of benefits issue in his complaint (although it appears to
(continued...)

where a denial of benefits claim has been disguised or repackaged as a fiduciary duty claim.  *Gore v. El Paso Energy Corp.*, 477 F.3d 833 (6th Cir. 2007) ("this Court in *Marks* acknowledged in dicta that this circuit will recognize a §1132(a)(3) claim as separate from a §1132(a)(1)(B) claim even against the same fiduciary.").  This case is similar to *Gore* in that a denial of benefits claim would not completely remedy the breach of fiduciary duty that is based on a material misrepresentation by the administrator.  But unlike and beyond *Gore*, Plaintiff is not even pursuing a denial of benefits claim in this case.

The facts underlying the claim, as just described, primarily relate to the conversations between Allen and Defendant and allege a failure to adequately inform him of an option for which he was eligible – the central allegations are not based on any denial of a request made by Allen, nor are they rooted in the letters from the administrator to the estate and heirs that state that they are not eligible to collect any benefits.  As such, this claim really is not one for a denial of benefits, but rather it is a pure allegation that the fiduciary duty was breached when Allen's options were not adequately laid out for him by the administrator.  Defendant would have it, however, that Plaintiff should be forced to plead a denial of benefits claim, and in so doing disavow his fiduciary duty claim.  For the reasons discussed above, the Court will not analyze Plaintiff's claim as one for unpaid benefits, but rather as a claim for breach of fiduciary duty.

### b. Monetary vs. equitable relief

ERISA § 502(a)(3) provides for an action by a participant or beneficiary to enjoin the act

---

[3](...continued)
relate to a declaratory judgment claim on a procedural notice issue), Complaint at 8, but a denial of benefits cause of action is not part of the complaint, and in any case Plaintiff abandoned the possibility of pursuing such a claim later in the litigation, which Defendant acknowledged.

or practice that violates the duties, or to obtain other appropriate equitable relief to redress the violation or enforce the duties.  29 U.S.C. § 1132(a)(3).  The legal or equitable quality of a particular claim to restitution "depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought."  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002); *accord Sereboff v. Mid Atlantic Med. Servs. Inc.*, 547 U.S. 356, 362-63 (2006).

The term "equitable relief" must refer to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)."  *Great-West Life*, 534 U.S. at 234 (citing *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993) (emphasis in original).  Restitution is considered legal relief "[i]n cases in which the plaintiff could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him."  *Great-West Life*, 534 U.S. at 212 (internal quotations and citations omitted).  These claims were categorized as legal because the plaintiff "sought 'to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money.'"  *Id.* (*citing* Restatement of Restitution § 160, Comment a, pp. 641-42 (1936)).

In contrast, restitution is considered equitable relief "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."  *Great-West Life*, 534 U.S. at 213; *see also Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002).  However, where "the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor" imposing personal liability on the defendant.  *Great-West Life*, 534 U.S. at 213-214.

12

"Thus, for restitution to lie in equity, the action generally must seek to … restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.

Initially, the Court notes that in *Krohn*, 173 F.3d at 552, the circuit reversed the district court's grant of summary judgment to the administrator on the plaintiff's § 502(a)(3) claim and remanded the case to the district court to determine the extent of the plaintiff's damages and enter judgment for the plaintiff. As explained below, this case is similar to *Krohn*, and this Court reaches a similar conclusion. Additionally, in *Sereboff*, the Supreme Court explained that damages were deemed legal and thus denied in *Great-West Life* because the plaintiff did not seek the restitution of funds in the defendant's possession, but rather funds in a special trust set up pursuant to California law. *Sereboff*, 547 U.S. at 362-63. "That impediment to characterizing the relief in *Knudson* as equitable [was] not present [in *Sereboff*]." *Id.* The plaintiff sought "'specifically identifiable' funds that were 'within the possession and control of the Sereboffs'-that portion of the tort settlement due . . . under the terms of the ERISA plan, set aside and 'preserved [in the Sereboffs'] investment accounts.'" *Id.*, citing *Mid Atlantic Medical Services, LLC v. Sereboff*, 407 F.3d 212, 218 (4th Cir. 2005). The Court distinguished *Great-West Life* because *Sereboff* did not involve a party "simply seek[ing] 'to impose personal liability ... for a contractual obligation to pay money.' *Knudson*, 534 U.S., at 210, 122 S.Ct. 708. It alleged breach of contract and sought money, to be sure, but it sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboffs' assets generally, as would be the case with a contract action at law." *Sereboff*, 547 U.S. at 363.

The case before this Court is more like *Sereboff* than *Great-West Life*. The funds accumulated to pay Allen's accrued benefit are currently held by the Plan. The hourly pension

contributions that Kroger made to the UFCW Pension Plan on behalf of Allen, over the course of his over 30 year tenure, are currently being held by the Plan.  Plaintiff is not asking for legal monetary damages and is not pursuing a breach of contract claim, but rather he seeks a deposit of the benefit to which Allen was entitled into the account held by the Plan.  Allen was entitled to the Ten-Year Certain Option, but was not adequately informed about the option and what it would mean for him (as discussed below, Defendant's reasons for not informing Allen about the option are insufficient).  So instead of electing the option, he returned to work while suffering from terminal cancer and passed away mere days before Defendant calculates his retirement would have been effective.

### 2. Does fiduciary status exist?

"[T]he definition of a fiduciary under ERISA is a functional one, is intended to be broader than the common law definition, and does not turn on formal designations such as who is the trustee." *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999). Under ERISA, fiduciary status is keyed to discretionary authority over a plan, its investments, or its administration, or to the provision of "investment advice":

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Moreover, since a person is a fiduciary "to the extent" that he or she does the enumerated actions, the same person may be a "fiduciary" in some but not all of his activities. *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 417-18 (5th Cir. 1990).

14

The question of Palmison's status as a fiduciary, on which Defendant focuses, is a misdirected one.  Palmison is not personally a defendant in this matter.  Rather, she was acting in her capacity as an employee and agent of NEBA, the Plan's administrator.  The administrator is clearly a fiduciary and owes a fiduciary duty to participants and beneficiaries.  That is not to say Palmison did not exercise discretionary authority – she did, after all, explain some of Allen's options to him to the exclusion of explaining other options based on her impression of his goals.  However, the question really must be about Defendant, and that question is an easy one, as Defendant contractually (if not inherently) has and exercises discretionary authority in the administration of the plan.

### 3. Did Defendant breach its fiduciary duty?

Plaintiff claims that Defendant breached its fiduciary duty by failing to provide Allen with complete and accurate material information regarding his eligibility for the Ten-Year Certain Option, which would have provided benefits to Allen and his heirs and estate.

Although there appears to be a split among some circuits, the Sixth Circuit has recognized that an ERISA fiduciary has some duty to disclose and inform beneficiaries of their material circumstances and other beneficial information under the plan.  *See Krohn*, 173 F.3d at 548.  The *Krohn* court summarized the obligations as follows:

> Although the United States Supreme Court has expressly declined to reach the question of whether ERISA imposes a duty on fiduciaries to disclose truthful information on their own initiative, or in response to employee inquiries, *see Varity Corp. v. Howe*, 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), we have previously held that "[a] fiduciary must give complete and accurate information in response to participants' questions...." *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir.1992); *accord Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445, 451 (6th Cir.1993) ("ERISA imposes a duty upon fiduciaries to respond promptly and adequately to employee-initiated inquiries regarding the plan or any of its terms."). We have also held that "[m]isleading communications to plan

15

participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty.' " *Drennan*, 977 F.2d at 251 (quoting *Berlin*, 858 F.2d at 1163). Furthermore, a fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally. *See Berlin*, 858 F.2d at 1163-64. In the present context, a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing disability benefits to which she may be entitled. *See In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1264 (3d Cir.1995).

Many of our sister circuits have held, more specifically, that once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even if that requires conveying information about which the beneficiary did not specifically inquire. *See, e.g., Shea v. Esensten*, 107 F.3d 625, 629 (8th Cir.), *cert. denied*, 522 U.S. 914, 118 S.Ct. 297, 139 L.Ed.2d 229 (1997) (health maintenance organization had fiduciary duty to disclose financial incentive structure intended to reward primary care physicians who minimized referrals to specialists); *Anweiler v. American Elec. Power Service Corp.*, 3 F.3d 986, 991 (7th Cir.1993) (fiduciary duty to communicate material facts affecting interests of beneficiaries "exists when a beneficiary asks fiduciaries for information, and even when he or she does not"); *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C.Cir.1990) ("At the request of a beneficiary (and in some circumstances upon his own initiative), a fiduciary must convey complete and correct material information to a beneficiary."). ERISA's fiduciary duty provisions incorporate the common law of trusts, which governed benefit plans before ERISA's enactment. *See Varity*, 516 U.S. at 496, 116 S.Ct. 1065. As set out in the Restatement (Second) of Trusts, a trustee "is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person." Restatement (Second) of Trusts § 173, comment d (1959). Moreover, we have been admonished by the Supreme Court to interpret the trust-like fiduciary standards ERISA imposes "bearing in mind the special nature and purpose of employee benefit plans." *Varity*, 516 U.S. at 497, 116 S.Ct. 1065 (citations omitted). Accordingly, we agree with the conclusion of our sister circuits that the "duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3rd Cir.1993).

These fiduciary duties to disclose and to inform govern the case before this court.

16

*Krohn*, 173 F.3d at 547-48.

In *Krohn*, the defendant argued that it did not breach its fiduciary duty by failing to inform the plaintiff's husband that she was entitled to long term disability benefits when he requested general information about benefits for three reasons:

> (1) plaintiff did not specifically request information regarding long-term disability benefits; (2) all of the parties expected plaintiff to return to work before she would have become eligible for long-term disability benefits; and (3) Huron Memorial had already informed plaintiff of the availability of long-term disability benefits by providing her with a summary plan description and an employee handbook four years earlier.

*Krohn*, 173 F.3d at 548.  The court dismissed all three arguments and held that "Krohn's failure to specifically request information from Huron Memorial about long-term disability benefits did not relieve the hospital of its fiduciary duty to provide complete information about her disability insurance options."  *Id*.  The court noted that when the request was made, only two weeks had elapsed since the injuries occurred and "no one knew how long it would be before plaintiff could work again."  *Id*.  The court was "simply unpersuaded by th[e] argument" that it was unforseeable that the plaintiff would need long-term disability benefits because the plaintiff's husband "anticipated that [the] plaintiff would be able to return to work within five months."  *Id*.  The plaintiff's condition deteriorated and she remained without benefits until filing suit.

The *Krohn* case informs and shapes this Court's decision in the case at hand.  Allen approached Defendant and asked about his options for coverage and benefits.  Defendant argues that, in addition to giving Allen an SPD, the fiduciary duty was not breached because Allen stated that it was his intention to beat the cancer and return to work, and he did not specifically request information about the Ten-Year Certain Option.  He was not told that his heirs would receive benefits if he elected the Ten-Year Certain Option, and later their eligibility for that option was calculated by Defendant retrospectively to the time of Allen's death, and was based on the fact

17

that he, stricken with terminal cancer, returned to work for mere weeks in order to fulfill the obligation required to secure coverage for his expensive treatments for an additional three months.

While Defendant claims that Allen knew about the Ten-Year Certain Option, Palmison's deposition shows that she only mentioned it briefly and did not explain it in any notable detail. Allen expressed an interest in his pension options further by filling out a pension application.  But he may have not even had to, as it was Defendant's duty to inform him of the options in his best interest based on its knowledge of his condition and the fact that he inquired even generally (as discussed above).  Defendant's fiduciary duty was to act prudently and in the best interest of participants and beneficiaries.  Defendant, by failing to describe the Ten-Year Certain Option (which turned out to be applicable and in Allen and Plaintiff's best interests), acted imprudently and without regard to Allen's best interest.  Defendant's argument that it did not discuss many pension options, including the Ten-Year Certain Option, with Allen because he expressed a desire to beat his cancer so he could return to work is not convincing.  It should not have been surprising that anyone, let alone a long-term, hard-working individual such as Allen, would express a desire to beat his disease.  That does not excuse a fiduciary from explaining pension options that are in the employee's best interest.  Additionally, his expressed desire to stay at work may well have been based on his lack of information about the Ten-Year Certain Option, as it was not disclosed to him by Palmison, nor was it part of the conversation when he actually filled out a pension application and asked for it to be held.  The pension options that were explained to him were not attractive because they did not help with the high costs to him and his family, so he declined formally to submit his pension application and opted to return to work.

18

**B. Equitable estoppel**

Plaintiff seeks to estop Defendant from asserting that Allen failed to timely elect a Ten-Year Certain Option, and to estop Defendant from prohibiting Plaintiff from designating the beneficiary of the Ten-Year Certain Option.  In light of *Krohn* and this Court's judgment that Defendant breached its fiduciary duty, a decision on equitable estoppel may be extraneous. Nevertheless, discussion is warranted.

The elements of equitable estoppel are:

1) conduct or language amounting to a representation of material fact;
2) awareness of the true facts by the party to be estopped;
3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;
4) unawareness of the true facts by the party asserting the estoppel; and
5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991).

Defendant's conduct and language in communicating to Allen his options, while neglecting to adequately inform him about the Ten-Year Certain Option, which was a particulalry beneficial option for someone in his situation, amounted to a representation (or withholding information) of material fact.  Meanwhile, at least some employees or agents of Defendant were aware that the Ten-Year Certain Option applied to retirees such as Allen (and, as definitively revealed later, it did).  Defendant's advising Allen and providing him with information about his health insurance and (partially) his pension options gave Allen a right to believe that Defendant's conduct was intended to advise Allen to select an option based on the information Defendant provided.  Allen was unaware that the Ten-Year Certain Option applied to him.  In reliance on the incomplete information, Allen selected an option which paid significantly less to his estate, and

19

caused him to work while suffering from cancer.

Defendant argues that applying estoppel here would contradict unambiguous plan language.  The language cited is that which indicates that Allen would only qualify for the Ten-Year Certain Option if he survived past December 1, 2005.  However, that date is not actual plan language, but rather an interpretation of the provision which provides that the earliest date an employee's retirement may take effect is the first day of the month immediately following his retirement date.  Allen returned to work from October 22, 2004 through November 1, 2004, then returned to leave of absence status from November 2 through the date of his death.  Defendant is correct that the first day of the month following Allen's death was December 1, 2005.  However, the underlying contention here for equitable estoppel purposes must be that Allen would have retired in October, not November, had he been advised of his eligibility for and the details of the beneficial Ten-Year Certain Option.  Defendant calculates the retirement date based on the date of Allen's death.  That is not unambiguous plan language, but rather an interpretation of plan language.

**C. Attorney's fees**

29 U.S.C. § 1132(g) confers broad discretion on a district court in making an award of attorney's fees in an ERISA action:

> In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1). "Consequently, the decision of a district court to award attorney's fees under 29 U.S.C. § 1132(g)(1) will stand absent an abuse of discretion." *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998).  *See also Tiemeyer v. Community Mut. Ins. Co*., 8 F.3d 1094,

1101-02 (6th Cir. 1993). "In exercising its discretion, our Circuit requires the district court to

consider the following factors" in deciding whether to award attorney's fees:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing
> party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an
> award on other persons under similar circumstances; (4) whether the party
> requesting fees sought to confer a common benefit on all participants and
> beneficiaries of an ERISA plan or resolve significant legal questions regarding
> ERISA; and (5) the relative merits of the parties' positions.

*Id.* (citing *Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985)). "Because no

single factor is determinative, the court must consider each factor before exercising its discretion."

*Id. See also Wells v. United States Steel*, 76 F.3d 731, 736 (6th Cir. 1996).

The Court does not find it appropriate to award attorney's fees in this action.

Defendant could satisfy an award of attorney's fees.  However, the degree of Defendant's

culpability and bad faith are less than egregious; although Defendant was wrong, it had a

rational, if not cold, interpretation of the Plan from its perspective.  Additionally, the

deterrent effect of such an award would be unclear, and does not appear to increase with

the award of attorney's fees, given the penalty Defendant will suffer from reallocation of

Plan funds to Plaintiff's plan account.  Plaintiff was not seeking to confer a common

benefit or resolve a "significant legal issue."  Both sides had merit to their arguments.  On

balance, an award of attorney's fees is not warranted.

### D. Other issues

Because the Court does not herein concern itself with any party's claim for denial

of benefits, Plaintiff's request for a declaratory judgment relating thereto is hereby denied

as moot.  Other issues have been raised by the parties also to that regard, and the Court

finds them unnecessary to resolve.  The judgment herein speaks for itself.

21

**IV. Conclusion**

For the reasons stated herein, Plaintiff's motion for summary judgment (Doc. 41) is hereby granted.  Defendant's motion for summary judgment (Doc. 38) is hereby denied.

IT IS SO ORDERED.

$\underline{\quad s/\textit{David A. Katz}\quad}$
DAVID A. KATZ
U. S. DISTRICT JUDGE

22